IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRANDY A DICKEY,                                     )
                                                    )
                        Plaintiff,                   )
                                                    )
v.                                                  )        Case No. 2:23-cv-02188
                                                    )
TWO TRAILS HEALTHCARE, INC. D/B/A                    )
THE HEALTHCARE RESORT OF OLATHE,                     )        **JURY TRIAL REQUESTED**
**Serve Registered Agent:**                          )
        Cogency Global, Inc.                         )
        2101 S.W. 21st Street                         )
        Topeka, KS 66604                              )
                                                    )
And                                                 )
                                                    )
THE ENSIGN GROUP, INC.,                              )
**Serve Registered Agent:**                          )
        Cogency Global, Inc.                         )
        850 New Burton Road, Suite 201               )
        Dover, DE 19904                              )
                                                    )
And                                                 )
                                                    )
ENSIGN SERVICES, LLC,                                )
**Serve Registered Agent:**                          )
        The Corporation Trust Company                )
        Corporation Trust Center                     )
        1209 Orange Street                           )
        Willington, DE 19801                         )
                                                    )
                        Defendants.                  )

## COMPLAINT

Plaintiff, Brandy A. Dickey, by and through counsel, states and alleges his causes of

action against Two Trails Healthcare, Inc. d/b/a The Healthcare Resort of Olathe, The Ensign

Group, Inc., and The Ensign Services, LLC for employment discrimination and retaliation under

the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), Americans with Disabilities Act, As Amended, 42 U.S.C. § 12101, *et seq.*, ("ADAAA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and Kansas Public Policy (Workers' Compensation) retaliation, as follows:

## PARTIES

1.      Plaintiff, Brandy A. Dickey, is a 47-year-old female citizen of the United States, residing at 784 Limit Street, Leavenworth, Kansas 66048, and was at all relevant times individually or jointly an "employee" of Defendants under the ADEA, FMLA, and the ADAAA.

2.      Defendant Two Trails Healthcare, Inc. d/b/a The Healthcare Resort of Olathe ("HCR Olathe") is a foreign for-profit corporation organized and existing under the laws of the State of Nevada and is a subsidiary of Ensign Group, Inc. and authorized to do business and doing business in the State of Kansas.  Defendant HCR Olathe's principal place of business is located at 21250 West 151st Street, Olathe, Kansas 66061.

3.      Defendant Ensign Group, Inc. ("Ensign Group") is a foreign for-profit corporation organized and existing under the laws of the State of Delaware and authorized to do business and doing business within the State of Kansas under its subsidiary Two Trails Healthcare, Inc. d/b/a The Healthcare Resort of Olathe.

4.      Defendant Ensign Services, LLC is a foreign for-profit corporation organized and existing under the laws of the State of Delaware and authorized to do business and doing business in the State of Kansas and is a subsidiary of Ensign Group, Inc.

5.      At all relevant times, Defendants were "employers" jointly and severally of Plaintiff within the meaning of the ADEA, FMLA, and ADAAA, and Defendants individually

2

and collectively were engaged in an industry affecting commerce and individually and/or collectively employed more than 500 persons during each week of each calendar year from January 1, 2022 to the present.

6.     All the acts, conduct and omissions of Defendants were performed by their agents, representatives and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically the ADEA, FMLA, and the ADAAA.

8.     This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. § 1367 to resolve Plaintiff's claims arising under Kansas law and public policy as the facts are so related to Plaintiff's federal law claims as to be part of the same case or controversy.

9.     Venue is proper within this District because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, the unlawful employment practices are alleged to have been committed in this District, and the Defendants have sufficient minimum contacts with this District to be considered residents of the State of Kansas for the purposes of the federal jurisdiction and venue statutes.

## FACTUAL ALLEGATIONS

10.     Plaintiff began her employment with Defendants on or about February 10, 2021 and she continued in his last position as a receptionist after being demoted from the Activities Assistant until her wrongful termination on or about March 16, 2022.

3

11.     At all times herein mentioned, Plaintiff was an "employee" of Defendants within the meaning of the ADEA, FMLA, and ADAAA, and she is entitled to all the benefits and protections of those laws.

12.     Throughout her employment with Defendants, Plaintiff was subject to the control of Defendants as to the means and manner of accomplishing her work as an employee.

13.     Defendants individually and/or jointly were "employer(s)" of Plaintiff within the meaning of the ADEA, the FMLA, and ADAAA.

14.     Pleading in the alternative, Defendants operated collectively as a single integrated enterprise as the employer of Plaintiff.

15.     Defendants are engaged in the healthcare industry, and they have employed 500 or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

16.     Defendants operate their businesses in a joint and integrated manner such that they effectively are joint employers or an integrated enterprise.

17.     On information and belief Defendants share management services such as check writing, personnel forms, policy manuals and filing of business reports with applicable state and federal agencies.

18.     On information and belief Defendants share payroll and insurance programs; they share the services of certain managers and personnel; they share office space, equipment and storage; they share certain officers and/or directors, and effectively they operate as a single unit.

19.     On information and belief Defendants have centralized control of labor relations in terms of centralized authority over labor and personnel policies, centralized legal management

of labor and personnel issues, joint maintenance of personnel records and policies, and intra-organization transfers and promotions of personnel are common between and among Defendants.

20.    Defendants share common ownership and financial control in that they share certain officers and directors, and Defendants jointly control their finances, operations, policies and procedures.

21.    Plaintiff was wrongfully terminated by Defendants on or about March 16, 2022.

22.    Throughout Plaintiff's employment with Defendants, she performed all duties of her positions as required, met or exceeded the expectations of her positions, and received praise, bonuses, raises, and good performance evaluations.

23.    Plaintiff had worked for Defendants and their predecessor, affiliated, or related entities for over one year, until she was wrongfully terminated on or about March 16, 2022.

24.    Plaintiff is 47 years old and suffers from pain and permanent impairment in her shoulder and sacroiliac joint in her back, diagnosed bipolar disorder, depression, and anxiety and/or other related impairments.

25.    These impairments qualify Plaintiff for protection as disabilities under state and federal law, and/or as serious health conditions entitling her to leave benefits and other protections under the FMLA.

26.    However, Plaintiff was able to perform the essential functions of her position, either with or without reasonable accommodations.

27.    Plaintiff was hired to be Certified Nurse Assistant ("CNA") in February of 2021.

28.    In March of 2021, Plaintiff injured her shoulder and back at work while she was trying to keep a resident from falling to the floor.  Plaintiff caught the resident but injured her rotator cuff, tore a bicep, and also injured her sacroiliac joint in her back.

29.    Because of the injury, she had restrictions on the amount of weight she could lift and how much weight she could push or pull.  She was moved to scanning in paperwork in the front office when she returned to work after having surgery in May of 2021 and performed these duties without issue.

30.    In or around August 2021, Plaintiff applied for the Activities Assistant position and was hired, even though she was still in an immobilizer for her shoulder.  There was an understanding between Plaintiff and HR that she could not reach, pull, push, with that arm and had limited weight restrictions for lifting.  She performed this position without issues with her medical restrictions.

31.    To the extent any residents at the facility needed assistance to attend the activities, Plaintiff was assisted by the CNAs or other staff, including Lexi Jameson.  This was not an issue until Elizabeth Munford (early 30s) was hired as the Executive Director in or around September 2021.

32.    After Ms. Munford was hired, snide and sarcastic comments were made about Plaintiff's disabilities and limitations, including but not limited to being told by her director "I can't believe I am having to take time out of my day to help you" and "Oh, this is too heavy for you, right?" (while rolling her eyes at Plaintiff).  Asking Plaintiff to get the ice cream out of the freezer and then saying, "Oh wait it might be too heavy" knowing that it was not.  Other comments included employees telling Plaintiff "Can't you do it!" and "Oh, Jesus!", among

6

others.  Plaintiff made complaints to HR about these comments and issues related to her worker's compensation injury and disabilities.

33.    After making complaints of discrimination and retaliation to HR, Plaintiff was told by Ms. Munford that she had to be able to perform all "duties" of the position of Activities Assistant and that she could no longer be accommodated.  She also told Plaintiff this was a "transitional duty assignment", even though Plaintiff had been hired for the position several months after coming back from surgery and being placed in another position.  Ms. Munford also told Plaintiff that she had to sign a copy of new job duties that Ms. Munford had created for the position or go out on leave unpaid until Plaintiff was able to come back to work full status with no restrictions.  She would not discuss any accommodations for Plaintiff's position and Plaintiff was forced to sign the paperwork for fear of losing her job and income.

34.    In or around January of 2022, Plaintiff had to have a second surgery on her arm, and her position as Activities Assistant was given to a 19-year-old because Ms. Munford said they needed someone who could push the residents to the activity room and back, even though Plaintiff had been doing this previously with the same restrictions.

35.    Plaintiff was hospitalized from March 16th-19th because she was experiencing chest pains and her liver enzymes were high.  Ms. Munford contacted the Plaintiff in the hospital and asked if her hospitalization was related to her workers' compensation issue, and she responded it was not.

36.    While still in the hospital, Plaintiff was contacted again and told they needed to meet with Plaintiff and that she was going to be terminated.  Plaintiff was told she was being fired for misconduct as of March 16th, but she was not provided with any other information.

37.     Ms. Munford said she was not going to disclose any information to Plaintiff for the reasons for termination.  The Plaintiff asked for a termination letter, which was never provided.

38.     Prior to this termination conversation, Plaintiff told Ms. Munford on at least two occasions that she felt she was being discriminated against because of her workers' compensation injury and claim.

39.     One of these occasions was mere weeks before Plaintiff's termination.  During this conversation Plaintiff brought up that she thought she was being discriminated and retaliated against for her work injuries and making a workers' compensation claim and Ms. Munford did not deny it.

40.     Plaintiff engaged in protected activity and made complaints of retaliation and discrimination on several occasions throughout her employment to various supervisors and human resources individuals, including making complaints mere weeks prior to her termination to Beth Munford, Lexi Jameson, and Alexis Belsanti, among others.

41.     After Plaintiff's work injuries and complaints, she tried to apply for two other jobs, Business Office Assistant and an HR position, but each time she was told she did not have enough experience.

42.     However, individuals who were younger and had less experience than Plaintiff were hired for these positions, including a 19-year employee who had no previous HR experience or college degree that was hired for the HR position.

43.     The individual hired for the HR position had no specialized training, skills, or background in HR.  She had less education than Plaintiff and no experience.

8

44.     On information and belief, Plaintiff was not even considered for the position because of her age, disabilities, FMLA leave, and worker's compensation claims and complaints of discrimination and retaliation.

45.     Beginning in or around March 2021 and continuing through her termination and thereafter, Plaintiff experienced a pattern and practice of discrimination and retaliation based on age, disability, FMLA interference or retaliation and/or retaliation for reporting a worker's compensation injury and filing a claim in the terms and conditions of her employment, including but not limited to unfounded discipline, denial of medical leave, and her wrongful termination, without any legitimate reason and in violation of the law.

46.     Plaintiff expressed her objections to this illegal and discriminatory treatment by Defendants and sought reasonable accommodations; however, she continued to be subjected to hostile, discriminatory and retaliatory treatment in the form of biased and discriminatory statements and actions, discriminatory pay, compensation and benefits, denial of reasonable accommodations, refusals to consider her for open positions, and ultimately her wrongful termination without any legitimate reason and in violation of Defendants' policies and procedures as of March 16, 2022.

47.     Less qualified, younger, non-disabled employees who were similarly situated to Plaintiff were retained, hired, and/or promoted and not subjected to the same discriminatory and retaliatory actions as she was.

48.     Plaintiff was denied consideration and was not consider for positions of business office assistant and human resource position she applied for but was told she did not have enough experience for any of these positions due to ongoing age and/or disability discrimination and/or FMLA interference/retaliation, and/or retaliation for her complaints and exercising her

rights under the worker's compensation laws, and on information and belief, less qualified, substantially younger, and/or candidates who had not raised complaints or filed workers compensation claims against Defendants were treated more favorably in the terms and conditions of their employment in considering, interviewing, hiring and filling these or similar positions for which Plaintiff was a better qualified candidate.

49.    On information and belief, these positions with Defendants were filled by less-qualified, younger and/or non-disabled employees who had not requested accommodations or medical leave, raised complaints, or filed workers' compensation claims against Defendants.

50.    The actions of Defendants against Plaintiff and other similarly situated older and/or disabled employees as set forth above and herein, constitute a pattern and practice of age and disability discrimination and retaliation.

51.    The true reasons for the discriminatory and retaliatory employment actions of Defendants against Plaintiff, including but not limited to those adverse actions set forth above, were illegal age and/or disability discrimination, FMLA interference and/or retaliation, and/or retaliation for her complaints about discrimination and retaliation, retaliation for exercising her rights under the worker's compensation, and/or her protected actions in advising her employer of her protected medical condition(s) and need for FMLA leave.

52.    Defendants engaged in a pattern and practice of age and/or disability discrimination and/or retaliation or FMLA interference/retaliation with respect to a hostile work environment, unfair discipline, disparate hiring, firing and a focus on getting rid of older female employees or those with disabilities or serious health conditions or those who report or discrimination or retaliation, or exercised their rights under the worker's compensation laws.

53.    Plaintiff's complaints of discrimination and retaliation were ignored, and no investigation was conducted into Plaintiff's complaints. Instead, Plaintiff was subjected to a hostile work environment, including false, discriminatory, and pretextual discipline and termination, after making direct complaints of discrimination and outlining the differential treatment she experienced compared to her younger, non-disabled coworkers, who had not made complaints of discrimination or retaliation, and who had not filed a worker's compensation claim.

54.    Then after Plaintiff's wrongful termination, Defendants fought her unemployment in further retaliation for her protected complaints and falsely accused her of "misconduct" but could not point to anything.

55.    On August 2, 2022, Plaintiff filed a timely charge of age and disability discrimination, and retaliation and Workers' Compensation retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC").  (Attached as Exhibit A).

56.    On or about January 31, 2023, the EEOC mailed a Notice of Right to Sue to Plaintiff (copy attached as Exhibit B).

57.    This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC.

58.    Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## COUNT I – AGE DISCRIMINATION (ADEA)

59.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 58 above.

60.     Plaintiff's age was a "but for" cause of Defendants' intentional decision to discriminate against her in the terms and conditions of her employment, including subjecting her to discriminatory and retaliatory treatment in the form of biased and discriminatory statements and actions, discriminatory pay, compensation and benefits, denial of reasonable accommodations, refusals to consider her for open positions, including but not limited to the positions of Business Office Assistant and Human Resource position, and her wrongful termination, and/or Defendants' other disparate treatment of the terms and conditions of Plaintiff's employment.

61.     Defendants instead hired, promoted, and retained substantially younger, less-qualified employees, all while articulating false reasons for the adverse job actions against Plaintiff.

62.     Defendants subjected Plaintiff to illegal age-biased actions, including as set forth above and herein, and by refusing to retain Plaintiff for positions she sought and by terminating Plaintiff's employment based on false, pretextual reasons.

63.     Defendants treated similarly situated, substantially younger and less-qualified employees and applicants better than Plaintiff in the terms and conditions of their employment.

64.     On information and belief, Plaintiff was replaced and/or her job duties were assumed by less-qualified, substantially younger employees and substantially younger, less-qualified persons were hired for the positions Plaintiff was seeking, including but not limited to Business Office Assistant and Human Resource position.

65.     The discriminatory actions of Defendants detrimentally affected Plaintiff in the terms and conditions of her employment with Defendants.

66.     Defendants knew, or should have known, of the age discrimination against their employees, including Plaintiff.

67.     Defendants failed to take prompt and appropriate corrective action to end the age discrimination against their employees, including Plaintiff.

68.     Defendants failed to make good faith efforts to enforce their policies to prevent age discrimination against their employees, including Plaintiff.

69.     Defendants' conduct was willful and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADEA, thus justifying an award of liquidated damages.

70.     As a direct result of Defendants' illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count I, and requests an award of her actual, compensatory damages, including but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT II – RETALIATION (ADEA)

71.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 70 above.

72.     Plaintiff had a good faith, reasonable belief that she was being subjected to unlawful employment practices including disparate treatment by Defendants on the basis of her age in the terms and conditions of her employment compared with similarly situated, substantially younger employees, and he reported the same to Defendants.

73.     Defendants retaliated against Plaintiff because of her opposition to unlawful discriminatory employment practices including by subjecting her to hostile, discriminatory and retaliatory treatment in the form of biased and discriminatory statements and actions, discriminatory pay, compensation and benefits, denial of reasonable accommodations, refusals to consider her for open positions, including but not limited to the positions of Business Office Assistant and an Human Resource position, her wrongful termination, and/or Defendants' other disparate treatment of the terms and conditions of Plaintiff's employment for false, pre-textual reasons as set forth above.

74.     Plaintiff's opposition to unlawful discriminatory employment practices was a but-for determining factor in Defendants' decision to subject him to adverse employment actions including those actions set forth above and herein and including the refusal to retain Plaintiff and the termination of her employment.

75.     Defendants' conduct was knowing and willful and intentionally violated Plaintiff's rights under the ADEA and is sufficient therefore to warrant an award of liquidated damages.

76.     As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other pecuniary and nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count II, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest, through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT III – DISABILITY DISCRIMINATION

77.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 76 above.

78.     The Defendants intentionally discriminated against Plaintiff on the basis of her disability, her record of a disability, or because they regarded her as disabled in the terms and conditions of her employment, including, but not limited to, by refusing to provide reasonable accommodations for her disability, by subjecting her to discriminatory and retaliatory treatment in the form of biased and discriminatory statements and actions, discriminatory pay, compensation and benefits, denial of reasonable accommodations, refusals to consider her for open positions, including but not limited to the positions of Business Office Assistant and an Human Resource position, and by their termination of Plaintiff for false, pre-textual reasons.

79.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of that term as utilized in the ADAAA, either as an individual with physical impairments related her shoulder and back, and/or to diagnosed bipolar disorder, depression, and anxiety and/or other related impairments, who can perform all of the essential

functions of her job with or without accommodations, or because she has a record of such impairments, or because Defendants regarded her as having such impairments.

80.     Defendants discriminated against Plaintiff on the basis of her disability by (a) not making reasonable accommodations to the known limitations of an otherwise qualified individual with a disability; (b) denying employment opportunities to and thereafter terminating an employee who is an otherwise qualified individual with a disability; (c) subjecting a qualified individual with a disability to different terms, conditions and privileges of employment than the terms, conditions and privileges available to non-disabled employees; and (d) refusing to accommodate and otherwise interfering with an individual in his exercise of rights under federal law prohibiting discrimination on the basis of a qualified disability, thereby violating the ADAAA.

81.     Defendants' illegal treatment of Plaintiff as set forth above and herein was motivated by an actual or perceived impairment related to her shoulder, back, diagnosed bipolar disorder, depression, and anxiety and/or other related impairments requiring medical treatment, and Plaintiff's medical impairments are not both transitory and minor.

82.     Plaintiff was able to perform the essential functions of her position as Activities Assistant with Defendants throughout her employment and at the time of her termination, either with or without reasonable accommodations.

83.     Defendants' beliefs regarding Plaintiff's diagnosed shoulder and back conditions, and diagnosed bipolar disorder, depression, and anxiety and/or other related impairments were a motivating factor in Defendants' adverse treatment of Plaintiff as set forth above and herein, including Defendants' decision to terminate her employment and their refusal to hire or rehire

Plaintiff for various positions including but not limited to the positions of Business Office Assistant and Human Resource.

84.    Defendants were aware of Plaintiff's medical impairments.

85.    Defendants failed to engage in the interactive process and failed to discuss or provide any reasonable accommodations to address Plaintiff's impairments, assuming such impairments qualify as disabilities under the ADAAA.

86.    As a direct and proximate result of the continuing pattern and practice of discrimination directed toward her or disparate treatment of her and of the Defendants' termination of her and refusal to rehire her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

87.    Defendants' conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish the Defendants and to deter Defendants from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count III, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate,

including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

### COUNT IV – ADAAA RETALIATION

88.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 87 above.

89.    Plaintiff had a good faith, reasonable belief that Defendants were engaging in unlawful employment practices that are prohibited under the ADAAA, including disparate treatment by Defendants in the terms and conditions of her employment compared with similarly situated, non-disabled employees, and she reported her opposition to these unlawful practices to Defendants and asked for reasonable accommodations as set forth herein.

90.    Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her opposition to unlawful employment practices and/or because of her protected actions in requesting reasonable accommodations for a qualified disability, including but not limited to, by refusing to provide reasonable accommodations, by subjecting her to hostile, discriminatory and retaliatory treatment in the form of biased and discriminatory statements and actions, discriminatory pay, compensation and benefits, denial of reasonable accommodations, refusals to consider or interview her for open positions, including but not limited to the positions of Business Office Assistant and Human Resources, and by their termination of Plaintiff for false, pre-textual reasons.

91.    Plaintiff's opposition to Defendants' unlawful employment practices and/or her requests for accommodation were motivating factors in Defendants' decision to retaliate against her in the terms and conditions of her employment.

92.    As a direct and proximate result of Defendants' continuing pattern and practice of illegal retaliation directed toward her or disparate treatment of her and of the Defendants' termination of her and refusal to rehire her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to his reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

93.    Defendants failed to make good faith efforts to enforce their policies to prevent discrimination and retaliation against their employees, including Plaintiff.

94.    The Defendants' retaliatory conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADAAA, thus justifying an award of punitive damages in an amount sufficient to punish the Defendants and to deter them from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants, jointly and severally, on Count IV, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest and any such other relief as the Court deems just and proper.

## COUNT V –FMLA INTERFERENCE AND/OR RETALIATION

95.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 94 above.

96.    Plaintiff engaged in a protected activity by requesting Defendants provide her qualifying medical leave under the Family Medical Leave Act for her serious medical conditions.

97.    Plaintiff in good faith attempted to exercise her rights with Defendants under the FMLA to take leave due to her own serious health conditions from which she was hospitalized.

98.    Defendants interfered with Plaintiff's requests for the use of FMLA leave time, and/or retaliated against Plaintiff in the terms and conditions of her employment because of her requests to utilize FMLA leave time, including but not limited to, by discouraging, denying or limiting her medical leave, by subjecting her to hostile and biased comments and actions, by subjecting her to false performance criticisms, refusals to consider or interview her for open positions, including but not limited to the positions of Business Office Assistant and Human Resources, and by its termination of Plaintiff for false, pre-textual reasons.

99.    Plaintiff's exercise of rights under the FMLA was a motivating factor in Defendants' decision to subject her to a hostile work environment and the adverse job actions set forth herein, including but not limited to the denial of medical leave, refusals to consider or interview her for open positions, including but not limited to the positions of Business Office Assistant and Human Resources, and termination of Plaintiff's employment.

100.    Defendants' actions were willful, outrageous and done with reckless indifference to Plaintiff's rights under the FMLA.

101.    Defendants failed to make good faith efforts to enforce its policies to prevent retaliation against its employees or interference with its employees' legal rights under the FMLA, including the rights of Plaintiff.

102.    As a direct and proximate result of Defendants' illegal actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, loss of self-esteem, humiliation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants on Count V, and requests an award of her actual damages, including but not limited to her lost wages and benefits and other monetary damages, with interest, through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT VI – KANSAS PUBLIC POLICY (WORKERS' COMPENSATION)

103.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 102 above.

104.    During the course of her employment with Defendants, Plaintiff suffered an on-the-job work-related injury on or about March 8, 2021, for which she could have, and did assert a claim for workers' compensation requiring multiple surgeries to her shoulder and sacroiliac joint in her back.

105.    The Plaintiff availed herself of workers' compensation benefits in the form of medical treatments to her shoulder and back and in the form of filing a claim for benefits and providing her deposition in October of 2021.

106.    The Defendant had knowledge of the Plaintiff's on-the-job injury.

107.    Defendants were aware of Plaintiff's reports of a workplace injury and workers' compensation claim prior to subjecting her to a hostile work environment and the adverse job actions set forth herein, including but not limited to the denial of medical leave, refusals to consider or interview her for open positions, including but not limited to the positions of Business Office Assistant and Human Resources, and termination of Plaintiff's employment for pretextual reasons.

108.    After Plaintiff availed herself of workers' compensation benefits, Defendants retaliated against Plaintiff in the terms and conditions of her employment, including but not limited to, by terminating Plaintiff's employment for false, pretextual reasons.

109.    A causal connection existed between the protected activities of seeking medical treatment for the on-the-job injury and making a workers' compensation claim, and her treatment and termination.

110.    Upon information and belief, Plaintiff was denied medical leave, accommodations, and open positions, including but not limited to the positions of Business Office Assistant and Human Resources, and terminated as a result of exercising and requesting the benefits to which she was entitled to under Kansas Workers' Compensation Law.

111.    Upon information and belief, Defendants engaged in a pattern and practice of retaliation and termination of employees that availed themselves of workers' compensation benefits.

112.    Defendant violated the law and public policy by discharging Plaintiff from her employment because Plaintiff exercised her rights under the Kansas Workers' compensation statute as set forth in K.S.A. § 44-501 *et seq.*

113.    As a direct and proximate result of Defendants' illegal retaliatory actions and termination, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, loss of self-esteem, humiliation, and other nonpecuniary losses.

114.    Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from like conduct in the future.

115.    WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants in excess of $75,000, jointly and severally, on Count VI, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest and any such other relief as the Court deems just and proper.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this Complaint.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By /s/ Raymond A. Dake
Amy R. Jackson                     KS #28169
ajackson@sirosmithdickson.com
Raymond A. Dake          KS FED #78448
rdake@sirosmithdickson.com
Ryan P. McEnaney          KS FED #78827
rmcenaney@sirosmithdickson.com
1621 Baltimore Avenue
Kansas City, Missouri  64108
816.471.4881 (Tel)
816.471.4883 (Fax)

**ATTORNEYS FOR PLAINTIFF**